DAVID A. WILLIAMS *v.* STATE OF INDIANA.

[No. P.S. 253. Filed June 26, 1974.]

---

*David A. Williams*, Pro se, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Appellant David A. Williams was convicted of disorderly conduct following a trial before a jury. On his *pro se* appeal, Williams alleges that he was prejudiced by two irregularities in such proceedings.

Appellant predicates error upon the alleged peremptory challenge of the only black member of the panel from the jury by the prosecutor and upon the alleged hearing of one segment of the pretrial proceedings by a judge who had been struck from a three-judge panel that had been named pursuant to Ind. Rules of Procedure, Criminal Rule 13.

The Supreme Court of the United States discussed a contention as to peremptory challenge which is strikingly similar to that of the appellant herein in *Swain* v. *State of Alabama* (1965), 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759. Therein, at 220-222 of 380 U.S., at 836-837 of 85 S.Ct., at 772-773 of 13 L.Ed.2d, the court stated:

> "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. [Citing authorities.] While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. [Citing authority.] It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' [citing authority] upon a juror's 'habits and associations,' [citing authority] or upon the feeling that 'the bare questioning of [a juror's] indifference may sometimes provoke a resentment,' [citing au-

thority]. It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the *voir dire,* by both prosecutor and accused, [citing authorities]. This Court has held that the fairness of trial by jury requires no less. [Citing authority.] Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.

*"With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause.* To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto,* would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, *we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes."* (Footnotes omitted. Emphasis supplied.)

Thus, this contention of appellant herein cannot warrant reversal. *U.S.* v. *Ming* (7th Cir. 1972), 466 F.2d 1000, (Cert.

denied, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176) ; *Ard* v. *State* (1972), 259 Ind. 161, 284 N.E.2d 763.

Appellant's second contention involves the appointment of a special judge to preside over his trial. Appellant moved for a change of judge pursuant to CR. 13, *supra,* and a three-judge panel was named. He asserts that after he struck one judge from the list of three, that judge was on the bench during the striking of a second judge from the list, and that this was error.

Even if these asserted events did transpire, which does not appear from the record of this case before us, it is clear that no prejudice to the appellant resulted. The presence of a particular judge during such a brief, routine pre-trial proceeding, involving no exercise of judicial discretion, could not have generated error harmful to the appellant herein. Moreover, appellant has not endeavored in any wise to enlighten the court as to what prejudice he has suffered. Thus, this contention likewise does not warrant reversal.

Appellant further intimates that because he is black and his ancestors had citizenship forced upon them by the Fourteenth Amendment, the Constitution of the United States does not apply to him. This argument is patently specious.

No reversible error having been shown, the judgment of conviction of the trial court must be affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 312 N.E.2d 526.