**Jerry ROSEBERRY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 979S242.**

Supreme Court of Indiana.

April 15, 1980.

Richard Salb, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Jeffrey K. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Jerry Roseberry was found guilty of first degree murder by a jury in the Marion Criminal Court and sentenced to a term of life. The four issues presented for consideration in this appeal are: (1) whether the trial court erred in asking a question of a defense witness; (2) whether the trial court erred in permitting the prosecutor to question a defense witness about his past criminal record; (3) whether the trial court erred in giving a final instruction to the jury regarding flight; and (4) whether the evidence is sufficient to sustain the conviction.

On June 4, 1973, four men entered the Sacks Eagle Loan Company in Indianapolis and forced the occupants at gun point to give them money and property in their possession and on the premises. During the course of the robbery, one of the company employees was shot and killed. Eventually, all of the participants of the robbery and murder were apprehended and convicted. Arthur Thomas and appellant Roseberry were apprehended in California and returned to Indiana for trial. The robbery and the apprehension of appellant occurred in 1973. We note here, to explain the passage of time between the commission of the crime and the disposition of this appeal, that many events transpired at the trial level before this cause was submitted to this Court. A previous trial of this defendant resulted in a hung jury. Appellant was tried a second time and convicted. After counsel failed to perfect an appeal there-

from, new counsel was appointed and appellant was granted permission to file this belated appeal.

### I.

The defendant called, as one of his witnesses, Stewart Brooks, who testified that he was a participant in the robbery and murder at the Sacks Loan Company. Brooks testified he entered guilty pleas to charges arising out of the incident, and is now serving time at the Indiana Reformatory. He was sentenced to ten years for entering to commit a felony, and to a one-to-ten year term for involuntary manslaughter. Brooks testified that appellant Jerry Roseberry did not participate in this robbery and murder. He said there were only three participants: Vincent Thomas, James Thomas, and Brooks. He stated they needed money and thought the Sacks Company was a good place to get it. After the robbery, Brooks, Arthur Thomas and appellant Roseberry went to Detroit and then on to Los Angeles. After the direct and cross-examination of Brooks had been completed, the trial judge questioned the witness as follows:

"Q. I have one question, Mr. Brooks. Where and when were you apprehended?

A. I was arrested for flight to avoid prosecution in Savannah, Georgia, on January 8 of this year.

Q. I see."

Record at 565.

Appellant contends the testimony elicited from this witness by the question of the judge so demolished the witness' credibility that it tended to destroy appellant's defense and, therefore, constituted reversible error. We fail to see how appellant was prejudiced by this question and answer. Even considering the volunteered portion of the answer, stating that the manner in which he was apprehended was by arrest for flight to avoid prosecution, we cannot say the testimony reasonably could have had such an effect on the witness' credibility that appellant was thereby prejudiced. The arrest for flight to avoid prosecution was a means for returning Brooks to Indiana to stand trial for this crime. Brooks had already admitted before the jury that he did take part in these crimes and had entered guilty pleas to the crimes of entering to commit a felony and involuntary manslaughter. He further testified that he had, in fact, left the State and gone to Detroit and Los Angeles with Roseberry and Arthur Thomas. We therefore find no prejudicial error attached to the question asked by the trial judge and the answer it elicited.

### II.

Arthur Thomas also testified as a witness for appellant. He stated that he was one of the participants in this robbery and murder, and was, himself, serving a ten-year term for armed robbery and a one-to-ten year sentence for involuntary manslaughter. Thomas testified he drove one of the cars to the loan company but did not enter the building during the commission of either the robbery or murder. Thomas also testified that Jerry Roseberry did not participate in these crimes. On June 27, 1973, Thomas went to California with Roseberry and Brooks. He said Roseberry accompanied him because Roseberry wanted to help him, and that Roseberry had relatives in California. It was thought that Roseberry's mother, who lived in California, might give them some financial assistance. Thomas testified he first met Jerry Roseberry about five years before the incident while both were serving time in the Indiana Reformatory at Pendleton.

On cross-examination, the prosecutor questioned Thomas about his prior convictions. His testimony indicated that he had been convicted of assault and battery with intent to rob in 1966, and was again convicted of assault and battery with intent to rob in 1968. He served time in the Indiana Reformatory for both of these convictions. Appellant now argues this testimony was improperly admitted.

A witness' credibility may be attacked by questioning him about his convic-

tions for treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, perjury, or crimes involving dishonesty or false statements. This Court stated in *Ashton v. Anderson,* (1972) 258 Ind. 51, 55, 279 N.E.2d 210, 212: "It is well recognized that a witness may be required on cross-examination to answer as to prior convictions for the purpose of impeaching his credibility." The questions asked, and answers given in response, were proper areas of inquiry to impeach Thomas' credibility in this case, and the court committed no error in permitting them. *Ashton v. Anderson, supra* ; *Hennings v. State,* (1971) 256 Ind. 115, 267 N.E.2d 172. *Cf. Baker v. State,* (1978) 267 Ind. 644, 372 N.E.2d 1174; *Lewis v. State,* (1973) 157 Ind.App. 149, 299 N.E.2d 193.

### III.

■ Appellant next argues the trial court committed error when it instructed the jury on the issue of flight. The trial court instructed the jury in the following manner:

"You are instructed that you may consider evidence of flight of the accused, if any, as showing consciousness of guilt, along with all other evidence in the case."

Record at 185. Appellant acknowledges that this instruction is proper in form, but contends it was an improper instruction in this case. He argues the evidence of flight was so sketchy and inconclusive that it did not merit the giving of the instruction.

We think, however, that there was ample evidence from which the jury could find or infer that the defendant did, in fact, flee the jurisdiction. This evidence was presented by both State and defense witnesses. James Thomas, testifying on what the participants did after committing the crime, was asked:

"Q. What, if anything, did Roseberry and the rest of them agree to do, themselves, when they were at Jessie's house?

A. They agreed to get out of there, you know, to leave, you know, not to be caught there at the house."

Record at 432. He further testified, as we pointed out above, about the trip Roseberry made to California. Defense witness Stewart Brooks also testified that defendant Roseberry participated in discussions about leaving town. Brooks also testified that he, Roseberry and Arthur Thomas did leave town together to go to Detroit and Los Angeles. James Thomas testified that sometime after this incident he was in an alley with Arthur Thomas and Brooks, and that they told him they were leaving town. He knew that his brother, Arthur Thomas, and Roseberry did go to California and were later arrested there. Finally, appellant Roseberry was, in fact, apprehended in California and returned to Indiana for trial. There was, therefore, ample evidence of flight of the accused for the jury to consider it as evidence showing consciousness of guilt, and the court properly gave the instruction. *Dunville v. State,* (1979) Ind., 393 N.E.2d 143, 147; *Porter v. State,* (1979) Ind., 391 N.E.2d 801, 812. *See Lofton v. State,* Ind., 378 N.E.2d 834, 837–38.

### IV.

Finally, appellant alleges there was insufficient evidence for the jury to find beyond a reasonable doubt that he committed the crime of murder. Appellant's argument seems to be that the only direct evidence of his participation in these crimes was from an accomplice, James Thomas, who had plea-bargained with the State and received reduced penalties. Appellant does not point to any element of the offense which he says was not supported by the evidence. Rather, he attacks the credibility of the evidence that was presented.

■ In reviewing a claim of insufficient evidence, this Court will neither weigh the evidence nor judge the credibility of the witnesses. We look to the evidence most favorable to the State to determine if there is substantial evidence of probative value to support the jury's verdict. *Taggart v. State,* (1979) Ind., 390 N.E.2d 657, 659; *Pollard v. State,* (1979) Ind., 388 N.E.2d 496, 501. Moreover, we noted in *Martin v. State,* (1972) 258 Ind. 83, 279 N.E.2d 189,

that an accomplice is a competent witness, and a person may be convicted on the uncorroborated testimony of an accomplice. There was sufficient evidence presented to support the jury's finding of guilt beyond a reasonable doubt.

The judgment of the trial court is affirmed.

All Justices concur.